IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LUCY ALAGOZ,                                    6:12-CV-00902-RE

        Plaintiff,                          OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration[1],

        Defendant.

---

[1]   Carolyn W. Colvin became the Acting Commissioner of
Social Security on February 14, 2013.  Pursuant to Rule 25(d) of
the Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Michael J. Astrue as Defendant in this case.  No
further action need be taken to continue this case by reason of
the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405.

1 - OPINION AND ORDER

**TIM WILBORN**
P.O. Box 370578
Las Vegas, NV 89137
(702) 240-0184

Attorney for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**ERIN F. HIGHLAND**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2495

Attorneys for Defendant

**REDDEN, Judge.**

Plaintiff Lucy Alagoz seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, the Court **REVERSES** the decision of the Commissioner and remands for the calculation and payment of benefits.

2 - OPINION AND ORDER

## **ADMINISTRATIVE HISTORY**

Plaintiff filed her application for DIB on April 2, 2008, and alleged a disability onset date of May 3, 2007. Tr. 121.[2]

Plaintiff's application for DIB was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on September 9, 2010. Tr. 44-74. At the hearing Plaintiff was represented by an attorney. Plaintiff, a witness, and a vocational expert (VE) testified.

The ALJ issued a decision on January 27, 2011, in which he found Plaintiff was not disabled because she could perform other work in the national economy. Tr. 36. That decision became the final decision of the Commissioner on March 21, 2012, when the Appeals Council denied Plaintiff's request for review. Tr. 1-5.

On May 21, 2012, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.

## **BACKGROUND**

Plaintiff was born in 1963 and was 47 years old at the time of the ALJ's decision. Tr. 46. Plaintiff has an eighth grade education. Tr. 48. Plaintiff has past relevant work experience as a skirt panel assembler and sewing machine operator. Tr. 65-

---

[2] Citations to the official transcript of record filed by the Commissioner on January 30, 2012, are referred to as "Tr."

66.

Plaintiff alleges disability due to depression and pain in her neck, arms, hands, and back.   Tr. 148.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.   42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11

4 - OPINION AND ORDER

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair*

*v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her May 3, 2007, onset date.  Tr. 27.

At Step Two the ALJ found Plaintiff had the severe impairments of fibromyalgia, degenerative disc disease of the

cervical and lumbar spine, history of shoulder injury and decompression, and depression.  Tr. 27.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1.  The ALJ found Plaintiff had the RFC to perform a reduced range of light work, with the limitations that she cannot more than frequently climb ramps/stairs, balance, stoop, kneel, crouch, or crawl.  She can only occasionally climb ladders, ropes, or scaffolds.  She can only occasionally reach overhead with her dominant right upper extremity.  She can no more than frequently handle (gross manipulation), finger (fine manipulation), and feel with her dominant right upper extremity.  Tr. 29.

At Step Four the ALJ concluded Plaintiff was unable to perform her past relevant work, but at Step Five concluded there were other jobs that existed in significant numbers in the national economy Plaintiff could perform, and Plaintiff was therefore not disabled.  Tr. 34-36, 69-70.

## DISCUSSION

Plaintiff contends the ALJ erred (1) by finding Plaintiff less than fully credible; (2) by improperly rejecting medical opinions; and (3) by failing to support his Step Five finding with substantial evidence.  The court need not reach the third

argument

## I.  Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995).  However, the ALJ's findings must be supported by specific, cogent reasons.  *Reddick v. Chater,* 157 F3d 715, 722 (9th Cir 1998).  Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing."  *Id.*  The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.*  The evidence upon which the ALJ relies must be substantial. *Reddick,*  157 F3d at 724.  *See also Holohan v. Massinari,*  246 F3d 1195, 1208 (9th Cir 2001).  General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination.  *Reddick* at 722. *See also Holohan,* 246 F3d at 1208.  The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  *Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis:

the *Cotton* analysis and an analysis of the credibility of the

claimant's testimony regarding the severity of her symptoms."

[Footnote omitted.] *Smolen v. Chater,* 80 F3d 1273, 1281 (9th Cir

1996).

> Under the *Cotton* test, a claimant who alleges
> disability based on subjective symptoms "must
> produce objective medical evidence of an under-
> lying impairment which could reasonably be
> expected to produce the pain or other symptoms
> alleged...." *Bunnell,* 947 F.2d at 344 (quoting
> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799
> F.2d at 1407-08. The *Cotton* test imposes only
> two requirements on the claimant: (1) she must
> produce objective medical evidence of an
> impairment or impairments; and (2)  she must
> show that the impairment or combination of
> impairments *could reasonably be expected to*
> (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282.

The ALJ found Plaintiff not credible to the extent that her

allegations exceed the RFC. Tr. 30.  The ALJ noted Plaintiff's

testimony that she is unable to maintain full-time employment due

to "really severe back pain," which prevents her from sitting for

more than 30 minutes or standing for more than about 15 minutes

at a time.  Tr. 51.  Plaintiff testified that her right arm falls

asleep, turns numb, and she "usually" drops things.  Tr. 51.

Plaintiff testified that "mornings are the worst parts where I

can't really move my hands or my arms, or it's difficult for me

to walk, so I mostly stay in bed till at least noon, 1:00."  Tr.

54.

## A.   Hand and Arm Strength

The ALJ found the medical record did not support Plaintiff's claim that she drops things and has significant weakness in her hands and arms.   Tr. 30.   The ALJ said:

> Despite her testimony at hearing that she 'usually' drops items and that she has sig-nificant weakness and limited mobility in her arms and hands in the mornings, treatment records from July 2007 indicate that claimant denied any loss of strength in her hands and arms. [Citation omitted.] Claimant reported her inability 'to squeeze her hand together in the mornings' in February 2008, but her treatment provider provided her with a lace-up wrist brace and assessed 'query carpal tunnel syndrome'.   [Citation omitted.] Apparently, claimant did not mention any deficits with her hands or arms at a follow-up visit the next month in March 2008. [Citation omitted.] Instead, claimant demonstrated 5/5 muscle strength in her upper extremities and a  generally normal neurological examination. [Citation omitted.] Although she reported thumb and index finger joint discomfort in June 2008, she also ack-nowledged that she did not have any change in grip strength. [Citation omitted.] At that time, she demonstrated a negative Tinel sign, her physician assessed "osteoarthritis versus psoriatic arthritis,' and she received a pre-scription for Celebrex. [Citation omitted.] Claimant later reported that this medication was not helpful and she unilaterally discon-tinued its use. [Citation omitted.] Other treatment records indicate that she did not report hand or arm symptoms in November or December 2009 or from March to June 2010. [Citation omitted.] Notably, claimant's physical hand and thumb examination in October 2010 was "within normal limits.'" [Citation omitted.] As such, claimant's testimony at hearing regarding her arms and hands seems overstated in light of the objective medical evidence.   This undermines claimant's credibility.

Tr. 30-31.

In the July 2007 chart note Plaintiff "reports no loss of strength in the hands or arms, just continued burning pain." Tr. 323. In February 2008 Plaintiff reported pain and swelling of her hands radiating to her fingers, and she could not "squeeze her hand together in the mornings." Tr. 391. She received a wrist brace. March 2008 chart notes, contrary to the ALJ's assertion, refer to muscle pain, right shoulder, and neck pain, and pain down her right arm. Tr. 389. Muscle strength in Plaintiff's upper extremities was 5/5 and there was "mild decreased sensation to pinprick and light touch of both of her hands...." Tr. 390.

In June 2008, Plaintiff reported discomfort in her finger joints, and thought she might have carpal tunnel syndrome. Tr. 488. The ALJ correctly noted Plaintiff did not have any change in grip strength. Tinel's sign for nerve irritation was negative.

Plaintiff did not complain of hand or arm symptoms from November 2009 to June 2010. Tr. 30-31, 453-59, 479-86. Maria Armstrong-Murphy, M.D., examined Plaintiff in October 2010. Tr. 527-37. Dr. Armstrong-Murphy found Plaintiff's thumb examination was normal and she had a normal range of motion in her wrists. Tr. 530. Plaintiff had diffuse sensory numbness and dullness in the right arm, and Phalen's test for carpal tunnel syndrome was positive. Tr. 529. Dr. Armstrong-Murphy concluded that

12 - OPINION AND ORDER

Plaintiff had no functional limitations.  Tr. 527-37.  An examining physician's opinion that a claimant's ability to work is not objectively limited undermines the claimant's credibility. *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1196 (9th Cir. 2004)

Plaintiff points to the MRI evidence of a disc protrusion/herniation causing severe right neural encroachment at C6-7.  Tr. 295.  Dr. Armstrong-Murphy did not review this record. The disc protrusion could reasonably cause pain in Plaintiff's right arm.  In December 2006 Rodney Orr, M.D., noted Plaintiff's complaints of stiffness of the hand without muscle cramps, hand atrophy and weakness, tingling, a burning sensation and numbness of the right hand.  Tr. 239. Dr. Orr performed a foraminal compression test of the cervical spine, which resulted in pain radiating to the right arm, and he diagnosed a cervical disc disorder with myelopathy.  Tr. 240.

On this record, the ALJ's determination that Plaintiff overstated her complaints of inability to use her arms and hands is specific and cogent.  The ALJ validly considered the conflicting evidence of Plaintiff's arm and hand complaints in assessing Plaintiff's credibility.

## B.  Activities of Daily Living

The ALJ noted Plaintiff's September 2010 testimony that she had been doing "lots of laying down most of the day...for the

past two years." Tr. 31, 54-55. The ALJ properly noted Plaintiff's April 2008 assertion that she could lift up to ten pounds and walk for up to ½ mile at a time for up to one mile. Tr. 31, 173-80. The ALJ pointed to Plaintiff's August 2007 report that she exercised on a regular basis by walking outside or on a treadmill. Tr. 31, 407. The ALJ noted that in the October 2010 examination, Plaintiff demonstrated 5/5 muscle strength in her upper and lower extremities and no muscle atrophy.

The ALJ properly considered the lack of objective medical evidence to support Plaintiff's alleged level of inactivity in determining credibility.

## C. Waddell's Signs

The ALJ cited Dr. Armstrong-Murphy's report of positive Waddell's signs for compression, distraction, and rotation as undermining Plaintiff's credibility. Tr. 31, 528. "Waddell's signs" are a group of physical signs that may indicate a non-organic or psychological component to low back pain. *See* Gordon Waddell, John McCulloch, Ed Kummel & Robert Venner, "Nonorganic Physical Signs in Low-Back Pain," Spine 5(2), 117-125 (March/April 1980). The Commissioner cites 2 Dan J. Tennenhouse, M.D., J.D., F.C.L.M., *Attorneys' Medical Deskbook* 4th § 18:4 (updated 2012) for the proposition that three or more positive Waddell's signs are usually sufficient to make a diagnosis of

14 - OPINION AND ORDER

functional disorder or deliberate deception and to rule out
physical abnormality.

Plaintiff cites Gordon Waddell, *Spinal Update, Behavioral
Responses to Examination,* 23 Spine 2367-71 (1998), in which Dr.
Waddell noted that positive Waddell's signs could be explained by
other impairments, including neck pain and fibromyalgia.  On this
record, the ALJ improperly relied on positive Waddell's signs to
find Plaintiff less than fully credible.

**D. Inconsistencies Regarding Travel**

The Commissioner concedes the ALJ erred and misconstrued
Plaintiff's testimony regarding her travel.  The Commissioner
argues that this error was harmless because the ALJ identified
other specific and legitimate reasons to find Plaintiff less than
fully credible.

**E.  Unemployment Insurance Benefits**

Plaintiff testified she applied for and received
unemployment insurance benefits for "about a year" in 2006.  Tr.
50.  She applied for several light duty jobs, at grocery and
clothing stores.  The ALJ noted this testimony and asserted "that
claimant at least believed that she retained the capacity to
perform such functions during the relevant adjudicatory period,
which is inconsistent with her allegations that she cannot hold
objects or stand for more than 15-minutes at a time."  Tr. 32.

Plaintiff argues that she did not obtain, or try to perform,

15 - OPINION AND ORDER

any job, and that any work trial might have been less than full time.

The ALJ identified specific, cogent, clear and convincing reasons to find Plaintiff less than fully credible. The ALJ's credibility finding is supported by substantial evidence.

## II.  Medical Evidence

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ must generally accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate" reasons for discrediting one opinion in favor of another.  *Id.* at 830.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

## A.  Robert Hartog, M.D.

Dr. Hartog began treating Plaintiff in August 2007.  Tr. 406.  The record indicates he has examined Plaintiff at least 30 times.  On August 11, 2008, Dr. Hartog completed a medical source

statement in which he opined Plaintiff could sit for one hour at a time.  Tr. 372-75.  He opined Plaintiff could sit for six total hours in an eight hour day, stand for 15 minutes at a time, and stand or walk for two hours in an eight hour day.  Dr. Hartog found Plaintiff could lift 10 pounds frequently and 20 pounds occasionally.  The doctor opined Plaintiff could occasionally balance, climb steps or ladders, stoop, and handle.  Plaintiff could frequently reach and finger.  Tr. 373.  Dr. Hartog opined Plaintiff's "chronic pain limits her endurance and strength in doing manual type work."  Tr. 374.  Dr. Hartog stated Plaintiff has severe depression and chronic low back pain-status post lumbar diskectomy. Dr. Hartog opined that Plaintiff would miss work three to four days in an average month.  Tr. 374.

Dr. Hartog continued to treat Plaintiff, and in December 2008, he completed an additional medical source statement in which he opined Plaintiff could sit for one hour at a time and four hours in an eight hour work day, could stand or walk for less than 15 minutes at a time, and could stand or walk for two hours in an eight hour work day.  Tr. 519-20.  He opined Plaintiff could frequently lift up to 10 pounds and occasionally lift up to 20 pounds.  Plaintiff could occasionally balance, frequently climb and stoop, and occasionally handle with both hands.  She could frequently reach and finger with both hands. Tr. 520.  Dr. Hartog opined Plaintiff had chronic back pain,

17 - OPINION AND ORDER

fibromyalgia, and moderate to severe depression.  He stated that
chronic pain treated with opioids limits her ability to perform
manual tasks due to limited strength and endurance.  Tr. 521.  He
stated Plaintiff would be likely to miss three or four days of
work each month due to her conditions.

The ALJ noted Dr. Hartog's opinion, and stated "[y]et, Dr.
Hartog's physical examinations of claimant have revealed very
little and ... her pain complaints are transitory and related to
depressive symptoms [Tr. 459.]."  Tr. 33.  The ALJ stated "based
on its inconsistency with the treatment history, the undersigned
gives little weight to Dr. Hartog's opinion."  Tr. 33.  The ALJ
adopted most of the functional limitations identified by Dr.
Hartog in formulating Plaintiff's RFC, but excluded Dr. Hartog's
limitation to occasional handling with both hands and Dr.
Hartog's opinion that Plaintiff would miss three to four days of
work each month due to her medical conditions.

Contrary to the ALJ's statement, Dr. Hartog found or
reviewed objective evidence of medical issues.  Dr. Hartog noted
a CT scan showing a moderate posterior disc bulge at L4-5 with
left facet osteoarthritis. Tr. 398. Plaintiff had back surgery in
February 2006 including left L4-5 partial hemilaminectomies,
foraminotomy over the L5 root, and curettage of the left L4-5
facet joint in the lumbar spine.  Tr. 523.  Dr. Hartog found
positive responses to 16 of 18 fibromyalgia tender points in

18 - OPINION AND ORDER

March 2010.  Tr. 480.  But in June 2010, Dr. Hartog expressed the
desire to obtain a rheumatology consultation to confirm or rule
out fibromyalgia.  Tr. 485.  Dr. Hartog noted a sad and tearful
appearance, a positive Tinel's sign in the left hand, and
multiple points of tenderness in Plaintiff's hands, as well as
decreased sensation to pinprick and light touch in both hands.
Tr. 390-92, 489.

Moreover, Dr. Hartog's opinion regarding Plaintiff's
limitation to occasional handling is consistent with the opinion
of Plaintiff's former treating physician, Dr. Orr.  In April
2007, Dr. Orr recommended Plaintiff reduce her physical activity,
reduce lifting, perform no pushing or pulling, and no repeated
bending of the back.  Tr. 232.

The ALJ erred when he failed to include in the RFC
Plaintiff's limitation to occasional handling with both hands.
In addition, Dr. Hartog's uncontradicted opinion that Plaintiff
will be likely to miss three to four days of work each month due
to her impairments and limited strength and endurance due to her
opioid use, should be credited.

**III.  Remand**

The decision whether to remand for further proceedings or
for immediate payment of benefits is within the discretion of the
court.  *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000),
*cert. denied,* 531 U.S. 1038 (2000).  The issue turns on the

19 - OPINION AND ORDER

utility of further proceedings.  A remand for an award of
benefits is appropriate when no useful purpose would be served by
further administrative proceedings or when the record has been
fully developed and the evidence is insufficient to support the
Commissioner's decision.  *Strauss v. Comm'r,* 635 F.3d 1135, 1138-
39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593
(9th Cir. 2004)).  The court may not award benefits punitively,
and must conduct a "credit-as-true" analysis to determine if a
claimant is disabled under the Act.  *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be
credited and an immediate award of benefits directed where: (1)
the ALJ has failed to provide legally sufficient reasons for
rejecting such evidence; (2) there are no outstanding issues that
must be resolved before a determination of disability can be
made; and (3) it is clear from the record that the ALJ would be
required to find the claimant disabled were such evidence
credited.  *Id.*  The "credit-as-true" doctrine is not a mandatory
rule in the Ninth Circuit, but leaves the court flexibility in
determining whether to enter an award of benefits upon reversing
the Commissioner's decision.  *Connett v. Barnhart,* 340 F.3d 871,
876 (citing *Bunnell v. Sullivan,* 947 F.2d 871(9th Cir. 2003)(en
banc)).  The reviewing court should decline to credit testimony
when "outstanding issues" remain.  *Luna v. Astrue,* 623 F.3d 1032,
1035 (9th Cir. 2010).

The ALJ's omission of the treating physician's uncontroverted opinion is erroneous for the reasons set out above.  The Vocational Expert testified that, if Dr. Hartog's opinion is credited, Alagoz would be unable to maintain employment.  Tr. 71.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

Dated this 17 day of June, 2013.

James A. Redden
United States District Judge

21 - OPINION AND ORDER